CHIEF JUSTICE SIMPSON
delivered the opinion of the court:
The controversy between the parties is confined to two items in the settlement of the administrator.
One of the items is the sum of $250, which the administrator paid to F. Belt for his services in superintending and managing the farm of . the intestate for some months after his death. The services were proved to have been such as were proper and necessary under the circumstances, and rendered to carry into effect an arrangement that was advantageous to all the parties interested in the estate. It was also proved that the services were reasonably worth the sum paid by the administrator.
The principal objection now made to this item is, that it is not verified by the written affidavit of the claimant, as required by the statute. This objection is founded on a misconception of the class of claims to which the statute applies. Only those demands that were created by the decedent himself, and such as are properly demands against his estate, are embraced by it. Whether such demands are just, or contain usury, or whether there be any offset or discount against them, the personal representative may not know, and therefore the law requires them to be verified by the oath of the claimant, as well as by other proof
But this reason does not apply to debts created by the personal representative himself, nor are such debts, properly speaking, demands against the estate of the decedent. They are demands against the personal representative himself, and as he has personal knowledge of their correctness, he has a right to pay them without any verification by the claimant. The receipt executed by the creditor is prima facie evidence of the correctness of the demand, as well as of its payment; and if *556 the debt be controverted, all that it is incumbent on the personal representative to do, is to prove that the expenditure was proper, and such as he had a right to make. The exception to this item was therefore properly overruled.
The administrator was allowed a credit of $3,000 in the settlement of his accounts, for a claim which he had against his intestate, and this is the other item which is objected to.
It was proved by the most satisfactory testimony, that the intestate had, in his lifetime, induced the administrator, who had married his niece, she having been raised by him, and to whom he was much attached, to abandon his determination to remove to Mississippi, and to purchase a farm in Woodford county, in this state, by agreeing to pay five thousand dollars of the purchase money, in three annual instalments. Two thousand dollars thereof was paid by the intestate in his lifetime, and the remaining three thousand dollars is the sum for which the administrator claimed and obtained a credit in the settlement.
Two objections are urged against this claim. First, that the promise made by the intestate was not founded on a sufficient consideration to sustain it; and in the next place, that the contract, being verbal, could not be enforced under the statute of frauds, as it was not to be performed within a year from the time it was entered into.
First. The agreement by Graddy that he would abandon his determination to remove from this state, and purchase a farm in Woodford county, which agreement was immediately performed by him, constituted a sufficient consideration for the promise made by the intestate. Graddy not only remained in this state, but he incurred a heavy liability by purchasing the farm, in consequence of the promise by the intestate to pay five thousand dollars of the purchase money. The intestate was not, it is true, benefited in a pecuniary point of view by the arrangement, but he derived from it the gratification of retaining near to him his favorite niece, to whom, as he was himself childless, it is apparent he was very much attached. The act of Graddy in remaining in this state, and purchasing a farm at the request of the intestate, and for his gratification, consti *557 tuted not only a valuable, but a most meritorious consideration for the agreement by him to pay a part of the purchase money. (King's ex'rs vs. Hanna, 9 B. Mon., 370.)
Second. As the contract was verbal, and was not to be performed within a year, it was embraced by the statute of frauds. The statute, however, does not declare such contracts void, but only declares that no action shall be maintained upon them. The agreement is legal, although not enforceable by an action, and may be relied upon for many purposes.
In this case, the part of the agreement which Graddy was to perform, was to be performed within a year, and was in fact performed immediately after the agreement was entered into. It has been decided in England, and also in some of the American courts, that in such a case the statute of frauds does not apply, and that an action will lie for the non-performance of the stipulations by the other party. (Donellan vs. Read, 3 Barn, and Adol., 899 ; Holbrook vs. Armstrong, 10 Maine, 31; Hardesty vs. Jones, 10 Gill and John., Md., 404.)
Whether this doctrine can be sustained on principle, to its full extent, we do not deem it necessary now to decide. The right of the administrator to the credit allowed him is unquestionable according to the doctrine settled in the case of Roberts vs. Tennell, (3 Mon., 248.)
It was decided in that case, that although the landlord could not maintain an action on the verbal contract, yet that the statute did not deprive him of his right of distress for the rent due him, under the verbal contract, and that he had an undoubted right to rely on the contract by way of defense, if sued in an action of trespass, or to avow in an action of replevin brought a gain si him for taking the distress.
The statute of frauds does not affect the common law right of retainer by an administrator; nor is that right taken away, although it is modified by the act which makes all debts of equal dignity, and requires them to be paid rateably in the administration of estates.
In this case the right exists to its full extent, as the estate is much more than sufficient for the payment of all the debts. As, therefore, the administrator has a right of retainer for the *558 debt due him under the verbal contract, and can, according to the doctrine in the foregoing case of Roberts vs. Tennell, rely upon the verbal contract to protect him in the exercise of that right, the credit for the balance of the money which his intestate owed him was properly allowed by the circuit court. The agreement was performed by Graddy on his part, relying upon its fulfillment by his intestate, who, had he lived, would undoubtedly have performed his part of it. It would, therefore,, amount to a fraud upon the former, after he has executed the agreement, to deprive him of the benefit of it, on the ground that the contract was verbal merely. He cannot be restored to the situation he was before the contract was made, nor can he be compensated in damages by any other standard than that furnished by the contract itself. The equity, as well as the law of the case, is therefore in favor of the appellee.
Wherefore, the judgment is affirmed.