DAVID C. PERCIVAL *& al. versus* ROBERT H. HICHBORN.
SAME *versus* A. D. HARLOW *& al.*

A creditor who has assigned his account against his debtor to a third person, in consideration of a sum less than the whole amount due thereon, cannot maintain an action against such third person under R. S., c. 113, § 47, for assisting such debtor " in a fraudulent transfer and concealment of his property," unless he first rescind the assignment and tender back the whole consideration received.

If such assignment be deemed a settlement of the account made through such third person as agent of the debtor, it would be binding until such rescision and tender.

Neither can the creditor maintain assumpsit on the original account after such assignment and prior to such recission and tender.

ON REPORT.

The first action is case founded on R. S., c. 113, § 47. Writ dated June 18, 1868. One count charges the defendant with assisting A. D. Harlow and Charles Hichborn, under the name and firm of Harlow & Hichborn, in a concealment of their goods at Bangor, in the winter of 1867–8;

and the other, with taking from them, Jan. 20, 1868, a transfer of their goods for the same purpose.

There was evidence tending to show that, during the year 1867, the plaintiffs sold to Harlow & Hichborn merchandize amounting, in the aggregate, to $1962,53; that Harlow & Hichborn failed in Dec. 1867, when the plaintiffs, with several other creditors, attached H. & H's goods; that, on Jan. 20, 1868, the defendant negotiated an assignment of several creditors' demands against Harlow & Hichborn to himself, at thirty-five per cent., among which was the plaintiffs' account; that, in effecting the assignment, the defendant made certain statements alleged to be false and fraudulent; that, in consideration of the assignment, the attachments were dissolved and suits discontinued. There was also evidence tending to show that the defendant knew of the failing circumstances of Harlow & Hichborn; that the defendant took from their store, after the attachments and before the assignment, quite large amounts of merchandise and concealed them; and that a settlement at thirty-five per cent. would leave a balance of assets of $13,000.

The remaining facts sufficiently appear in the opinion.

*J. A. Peters* and *F. A. Wilson*, for the plaintiffs.

The concealment and subsequent sale are causes of action. The statute as it is gives a remedy " in any case," where plaintiff is a creditor. Plaintiffs' attachment was dissolved by fraudulent representation. The actual concealment of the goods prevented them from being " seized on execution."

The settlement of the account against Harlow & Hichborn, whether it was a sale to the defendant or a discharge of H. & H., was avoided by the fraud of the defendant. It was rescinded immediately upon a knowledge of the facts by the creditors, by bringing suits upon the original demands against H. & H.

Consideration need not be tendered back prior to bringing this suit. It is not in the mouth of the defendant to set up that money has not been returned if he has perpetrated a fraud. If the transaction was merely a discharge to the

original debtors, no tender back is necessary. If necessary to the debtors, not to this defendant. No relation between these parties requiring such technicality. *Stevens* v. *Austin*, 1 Met., 557; *Manning* v. *Albee*, 11 Allen, 520; *same* v. *same*, 14 Allen, 7.

The negotiations between the creditors and the defendant constituted a mere settlement. He raised the money and thereby became the creditor of H. & H., who subsequently paid him the amount.

The taking of thirty-five cents for one hundred cents constitutes no consideration for the agreement to release the remaining sixty-five cents. Hence the sixty-five cents are recoverable. *Bailey* v. *Day*, 26 Maine, 88; *Lee* v. *Oppenheimer*, 32 Maine, 253.

R. S., c. 82, § 44, cannot be invoked, because,

1. The claim has not been "settled." The attempted settlement was vitiated by fraud, and hence relation of the parties same as if there were no such statute.

2. The statute does not apply, because settlement was made in Boston. The *lex loci* must govern. The original statute, Pub. Laws of 1851, c. 213, provided that no action shall be maintained "in any Courts of this State," &c. Hence action might be maintained in U. S. Court in the District of Maine, or in Massachusetts Courts.

3. Statute does not inhibit this kind of action.

4. Statute does not affect the contract, but only a particular remedy, not this remedy.

If a tender was necessary, it was waived.

The reason of the rule requiring a tender is "so as not to increase the injury necessarily caused to the other by the rescission," and because the thing a party may have had fraudulently imposed on him may be of more value to the other party. It is also said that to rescind, one must put the other party in as good a position as he can without injury to himself. Neither of these reasons applies to case at bar; for if plaintiffs do not prevail, defendant is uninjured; if they do, the defendant or H. & H. is not injured

merely because plaintiffs have received a portion of their account without a suit.

The reason of the rule applies to other property than money.

Counsel also cited *Martin* v. *Roberts*, 5 Cush., 126; *Pierce* v. *Wood*, 3 Foster, 519.

*A. W. Paine*, for the defendant.

DICKERSON, J. — The first action is CASE, on § 47, c. 113, R. S. One count charges the defendant with assisting Charles Hichborn and A. D. Harlow, co-partners under the name and firm of Harlow & Hichborn, in a concealment of goods at Bangor, in the winter of 1867 – 8, to prevent their attachment or seizure by Harlow & Hichborn's creditors, and the other count charges the defendant with taking from them afterwards a transfer of their goods for the same purpose.

The case comes before us on a report of the evidence submitted by plaintiffs, under an agreement by the parties, that if we should be of opinion that the action can be maintained, or if a nonsuit could not properly be ordered, the case is to stand for trial; otherwise, a nonsuit is to be ordered.

It appears that, at the time the fraud charged is alleged to have been committed, Harlow & Hichborn were indebted to the plaintiffs in the sum of $1962,32, that they were otherwise involved beyond their ability to pay, and that their property was under sundry attachments, made at the suit of the plaintiffs and other creditors.

It also appears that, in consequence of representations made to the plaintiffs and other creditors, in Boston, by the defendant, in regard to the pecuniary standing of Harlow & Hichborn, they were induced to enter into an assignment of their claims against them to the defendant, Jan. 9, 1868, thereby agreeing, in consideration of $6,400 paid them by the defendant, to deliver to him a transfer of such claims upon conditions which were subsequently complied with.

It further appears that the plaintiffs gave the defendant a bill of sale of their account against Harlow & Hichborn, Jan. 13, 1868, and that the defendant took a bill of sale of

the property of Harlow & Hichborn, Jan. 20, 1868, as per account stated in said bill of sale.

In order to entitle the plaintiffs to maintain this action, it must appear that they were creditors of Harlow & Hichborn, not only at the time of the alleged fraudulent transfer or concealment, but also, that they continued to be their creditors till the commencement of this suit. *Thatcher* v. *Jones*, 31 Maine, 533.

While the defendant's counsel concedes that the plaintiffs continued to be the creditors of Harlow & Hichborn till they transferred their claim against them to the defendant, Jan. 13, 1868, he contends that, by that transfer, the plaintiffs divested themselves of their character as creditors of Harlow & Hichborn, and thus became disqualified for maintaining this suit as such, whatever be the evidence of fraud, as they have not reimbursed the defendant with the consideration received for the transfer, as the law requires them to do, if they would rescind the sale for fraud. To this the plaintiffs' counsel replies, that, under the circumstances of this case, such reimbursement is unnecessary as a preliminary requisite for maintaining this action.

A sale made under false representations is not void, but voidable at the option of the party defrauded. In such case the vendor may insist that nothing passed to the vendee, and may maintain trover or replevin for his property; he may keep the property and affirm the sale, or he may rescind the sale. But, if he elects to rescind the sale, he must restore to the other party the whole of the consideration, whether money, goods, or securities, which may be of any value to either party. The law will not allow him the double advantage of retaining the consideration and bringing his action for the property, thus affirming the sale as to the defendant, and rescinding it as to himself, for the time being. The reason for this rule is, that if the defrauded party would reëstablish the relations of the parties to the property before the sale, he ought to do all in his power to restore that relation by first returning the consideration to the other party,

without putting him to an action therefor, before he undertakes to retain the property sold, or recover it by action at law. If the plaintiff is required to do this, it may happen that the defendant will voluntarily return the property without a suit. The party defrauded loses nothing by this rule, for if he does not choose to rescind the contract, he may recover under the defendant's warranty, if one was made, or, in case, for damages sustained by reason of the defendant's fraudulent representations. *Thayer* v. *Turner*, 8 Met., 552; *Garland* v. *Spencer*, 46 Maine, 528.

We do not understand the counsel for the plaintiffs to controvert the doctrine laid down in *Thatcher* v. *Jones*, that it is indispensable, to the plaintiffs' right to maintain their action, that it appear that they were creditors of Harlow & Hichborn at the time the alleged fraudulent representations were made, and continued such till the commencement of this suit, but they rest the plaintiffs' right of action upon the ground that the rule of law in regard to the rescission of contracts, as above stated, is not applicable in this case. We will consider briefly the several arguments with which it is attempted to establish this proposition.

1. It is contended that, if the transaction between the plaintiffs and defendant was a discharge of the original debtors, the plaintiffs were induced to discharge their claim by the fraud of the defendant, who cannot set up a discharge thus obtained in this suit. The case of *Stevens* v. *Austin*, 1 Met., 557, is mainly relied upon to establish this position.

This argument proceeds upon the theory that the defendant acted in the affair of his own motion and on his own responsibility alone; that the representations he made originated with him, and the money he paid was his own. If a fraud was perpetrated, he committed it; if a sale was effected, he was the purchaser. We are unable to see upon what principle he is precluded from invoking the rule of law in question; nor do we regard his case as distinguishable from the cases in the books, where the obligation to tender back the consideration is held necessary. In *Stevens* v. *Austin*, the action was brought against the party who bought

the property of the fraudulent vendor with a knowledge of the fraud.    The plaintiff had received nothing from the defendant, and there was therefore nothing for him to return ; and this was the ground upon which the Court held an offer to return the consideration unnecessary.

As to the question whether the plaintiff had made restoration to the fraudulent vendee, the Court say it was *res inter alios* with which the defendant had no concern, and which he could not inquire into.    The other cases cited also fail to establish this theory of the plaintiffs' right of action.

2. Again, it is urged that the arrangement being a mere, taking of 35 cents for 100 cents, there was no consideration for the agreement to release the 65 cents, and therefore there was no legal contract to be rescinded.    It is undoubtedly true that, at common law, a parol agreement by a creditor *with his debtor* to discharge the debt, on receiving a sum less than the amount due, is void as to the balance of the debt, for want of consideration to support a discharge of that part of it.    But it by no means follows that an agreement made between a creditor and a third party to transfer to the latter his claim against a debtor for a less sum than the amount due, is inoperative as to the balance.    On the contrary, such a contract would be binding upon the parties for the whole claim.    By the terms of the bill of sale of the claim of the plaintiffs against Harlow & Hichborn, the transfer was made to the defendant.    The transaction does not appear to have been a compromise between debtor and creditor, and is not, therefore, open to the objection made by the plaintiffs.    But if it was a compromise of the plaintiffs' claim, made between them and H. & H., as their debtors, it would be valid under Sec. 44, c. 82, R. S.    After such a settlement, before the creditor can maintain a suit on the original cause of action, on the ground of fraud on the part of the debtor, he must rescind the contract of settlement, and tender to the debtor whatever sum he had paid in effecting it.    *Bisbee* v. *Ham*, 47 Maine, 543.

The language of the statute, § 44, c. 82, is very broad and comprehensive.    It makes no distinction between com-

Percival *v.* Hichborn.

promises made in another State, which are sought to be enforced or repudiated here, and compromises made in this State; it sustains both alike when made in good faith, and inhibits all attempts to set them aside.

3. It is further argued that the arrangement between the plaintiffs and the defendant was really a settlement of their claim against H. & H., effected through the defendant, acting as their agent, and that on that account it is no obstacle in the way of maintaining this action.   Without considering the evidence with reference to the question of agency, it is a sufficient answer to this suggestion that even such a settlement would be binding upon the parties until rescinded, and a tender back of the consideration had been made by the plaintiffs.   While such settlement remains unrescinded, the plaintiffs cannot be regarded as the creditors of H. & H. It being incumbent upon them to show that they were the creditors of H. & H. at the commencement of this suit, the defendant, has a right to insist upon their producing the evidence of that relation.   This is a personal right given to the defendant under the statute, and it is not competent for H. & H. or either of them to waive this right for him in this action.

The plaintiffs either sold their claim against H. & H. to the defendant, or compromised it with them through him as their agent.   In either case the contract was not void but voidable, even if made in consequence of the fraud of the defendants.   They did not elect to rescind the contract, and tender back the consideration before they commenced this action.   That contract is binding upon the parties until it is thus rescinded.   The plaintiffs, therefore, were not creditors of H. & H., when they brought their action against the defendant, and cannot maintain it.   Nor can they for a like reason maintain their action against H. & H. on the original contract.   According to the agreement of the parties a nonsuit must be entered in both cases.

APPLETON, C. J., CUTTING, KENT, WALTON and TAPLEY, JJ., concurred.